# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **R.P.WALLACE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 96-222C** |
| **V.** | ) | **(Judge Allegra)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant** | ) | |

**PLAINTIFF'S BRIEF IN RESPONSE TO JUDGE'S REQUEST OUT OF TIME**

COMES NOW the Plaintiff, in response to a request from the Court, and in accordance with the Court's Order of March 29, 2004, files its brief on the issue of the burden of proof necessary to establish a delay entitlement based on defective specifications. In accordance with Rule 5.2(a)(1) of the Rules of the United States Court of Federal Claims, as this brief is less that ten (10) pages in length, the requirements under Rule 5.2(a)(1) (A) through (G) have been omitted.

## I. STATEMENT OF FACTS:

The facts upon which the request for delay damages are based are relatively simple and all references will be to documents in the Joint Exhibits (JE) filed with the Court. Initially, however, it should be noted and emphasized that the Defendant has acknowledged and stipulated to the fact that the specifications at issue were defective in that they provided for a muntin for the windows that could not meet the wind load requirement in the specifications.

It was the contention and testimony of the Plaintiff that the defect in the specifications was latent in that it did not realize that the wind load requirement could not be met with the specified muntin arrangement until its submittal had been disapproved by the Defendant (JE #12,

p. 0020-0022) and the Plaintiff's supplier then informed it and the Defendant that there was a defect in the specifications. (JE #12, pp. 0023-24, 0030-0031) After some discussion, the Defendant finally modified the specifications to correct the defect, (JE #12, p. 0034) however, the Plaintiff was by that time caught in a production and delivery schedule that extended the replacement of the windows schedule several months beyond its original completion date. (JE #12, p. 0027)

The delay was exacerbated by the Defendant's decision to insist on a specific design for the panning profile. While the Plaintiff's supplier offered to provide a historically accurate pan system that it could manufacture quickly, the Defendant insisted on the design in the drawings which required that the supplier to design and build a new extrusion profile. (JE #12, p. 0023)

Therefore, it is clear that there was a delay in the contract schedule that was the direct result of defective specifications.

## II. THE LAW:

Any discussion of delays and extra costs caused by defective specifications necessarily begins with *United States v. Spearin*, 248 U.S. at 136-137 where the Court stated that "if the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications." The Court of Appeals for the Federal Circuit has refined this concept as follows:

> "Spearin stands for the proposition that when the government includes detailed specifications in a contract, it impliedly warrants that (i) if the contractor follows those specifications, the resultant product will not be defective or unsafe, and (ii) if the resultant product proves defective or unsafe, The contractor will not be liable for the consequences. *Spearin,* 248 U.S. at 136-137, 39 S.Ct. at 61. As with any contract-based claim, however, a plaintiff must allege and prove (1) that a valid warranty existed, (2) the warranty was breached, and (3) plaintiff's damages were caused

> By the breach. *San Carlos Irrig. and Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed.Cir. 1989);"

*M.A. Mortenson Company v. United States*, 40 Fed.Cl. 389, 1998; See Also *CHEMS, Inc. v. United States*, 59 Fed.Cl. 168, 214 (2003).

This Court has stated that a plaintiff must prove that the defendant unreasonably delayed the completion of the contract and that plaintiff's costs were increased as a result to obtain an equitable adjustment. *Bruce Constr. Corp. v. United States,* 163 Ct.Cl. 97, 100, 324 F.2d 516, 518 (1963) Design specifications implicitly warrant that if followed an acceptable result will be produced. *Stuyvesant Dredging Co. v. United States,* 834 F.2d 1576, 1582 (Fed.Cir 1987); *Hol-Gar Mfg. Corp. v. United State*, 175 Ct.Cl. 518, 360 F.2d 634, 638 (1966) To determine whether the specifications are performance or design the court considers both the specifications as a whole and the way in which they were enforced. *Blake Constr. Co. v. United States,* 987 F.2d 743 (Fed. Cir., 1993) See also *Amertex Enterprises. LTD v. United States*, 1995 U.S. Claims LEXIS 259 (1995) The key inquiry is the extent of the discretion afforded the contractor. *Turner Construction Co. v. United States*, 54 Fed.Cl. 388, 398 (2002) However, analysis of a defective specification claim is not limited to assessment of the element of discretion. A contractor, in addition to demonstrating that the subject specifications do not permit meaningful discretion, must also show that the defective specifications are the cause of the injury. *Gulf Western Precision Engineering Co. v. United States*, 211 Ct.Cl. 207, 218, 543 F.2d 125, 130-131 (1976); *Fru-Con Construction Corporation v. United States*, 42 Fed.Cl. 94, 96 (1998).

In determining the delay, this Court has stated that "totality of the evidence provides a reasonable basis for apportioning the delay between the parties." *Tyger Constr. Co. v. United States*, 31 Fed.Cl. 177, 259 (1994) and that such apportionment justly requires that the

government "retain its liability for issuing defective specifications". *Dynalectron Corp. v. United States*, 207 Ct.Cl. 349, 367, 518 F.2d 594, 605 (1979).

While the contractor has the burden of proving that the specifications are defective, *Big Chief Drilling Co. v. United States*, 26 Cl.Ct. 1276, 1295 (1992), that hurdle has been met in this case by the Defendant stipulating to the defective nature of the specifications.

**III. DISCUSSION:**

While the law is fairly clear is this area and the Defendant has stipulated to the defective nature of the specifications, there apparently remains the questions of the delays and the cause therefor. It is, of course, up to the Plaintiff to carry the burden of proving that the defective specifications did dely it and the extent to which it was delayed. In this instance, the defective nature of the specifications was obviously latent as the Plaintiff was not aware of the fact that the muntins specified could not withstand the wind load until its ultimate supplier informed both the Plaintiff and the Defendant of that fact. It is obvious that the Defendant was also unaware of that fact as it placed on the street specifications that were impossible to perform.

As is clear from the exhibits, when the Plaintiff learned of the defective nature of the specifications and that they could not be performed as written, it had a choice of whether to stay with the supplier that has identified the problem or change to another supplier. It was also faced with the problem with the pan system which was apparently a special profile that could not be provided "off the shelf". Considering that the Plaintiff had contacted several other suppliers that had not even identified the problem with the specifications, changing suppliers at this juncture would have been foolish. Once this choice was made, the Plaintiff, and the Defendant, were stuck with the delivery schedule of the chosen supplier. It would then follow that all delays resulting from the defective window specification up to the delivery dates in September, 1994,

are the responsible of the Defendant, especially as there was no evidence of any concurrent delay on the part of the Plaintiff.

THEREFORE: The Plaintiff contends that it has carried its burden of proving that the specifications were defective and that the delays in the performance of this contract were the result of the defective specifications.

Respectfully Submitted;
MCMANUS & GRAHAM, LLP

s/ John C. McManus
John C. McManus
Georgia Bar No. 497775

P.O. Box 95269
Atlanta, GA 30347
404.292.9122